United States District Court
for the
Eastern District of California
March 8, 2001

\* \* CERTIFICATE OF SERVICE \* \*

2:96-cv-00965

Wong

v.

Regents of the Univ

_____

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Eastern District of California.

That on March 8, 2001, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office, or, pursuant to prior authorization by counsel, via facsimile.

Dan Siegel                      SJ/LKK
Siegel Yee and Jonas
499 14th Street
Suite 220
Oakland, CA  94612

Michael T Lucey
Gordon and Rees
Embarcadero Center West
275 Battery Street
Suite 2000
San Francisco, CA  94111

Jack L. Wagner, Clerk

BY: _____
        Deputy Clerk

FILED

MAR - 8 2001

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ANDREW H.K. WONG,

     Plaintiff,

  v.

REGENTS OF THE UNIVERSITY
OF CALIFORNIA,

     Defendant.

_____/

NO. CIV. S-96-965 LKK/GGH

**PRETRIAL CONFERENCE ORDER**
**[TENTATIVE]**

Pursuant to court order, a Pretrial Conference was held in Chambers on February 12, 2001. DAN SIEGEL and HUNTER PYLE appeared as counsel for plaintiff; MICHAEL LUCEY and MICHAEL BRUNO appeared as counsel for defendant. After hearing, the court makes the following findings and orders:

### I.  **JURISDICTION/VENUE**

Jurisdiction is predicated upon 42 U.S.C. § 2000d & 12101, 29 U.S.C. § 794, 28 U.S.C. §§ 1331 and 1343, and has previously been found to be proper by order of this court, as has venue. Those orders are confirmed.

*90*

1

1 **II.  JURY/NON-JURY**

2 Plaintiff has timely demanded a jury trial and this matter
3 will be tried to a jury.

4 **III.  UNDISPUTED FACTS**

5 1.  Plaintiff Andrew Wong graduated from San Francisco State
6 University, magna cum laude, in 1981, earning a Bachelor of Science
7 in Biochemistry with a cumulative grade point average of 3.54 out
8 of 4.

9 2.  Plaintiff went on to earn a Master's Degree in
10 Cellular/Molecular Biology from the California State University at
11 San Francisco in 1984.

12 3.  Plaintiff attended classes in Speech and Interpersonal
13 Communication at the San Mateo Community College during the summer
14 of 1987.

15 4.  Plaintiff was accepted by the U.C. Davis School of
16 Medicine at the beginning of the fall term in 1989, under no
17 special admission circumstances, and was originally to have been
18 in the graduating class of 1993.

19 5.  The School of Medicine consists of a four-year curriculum;
20 typically, in the first two years, students take academic courses
21 in basic sciences; in the third year, they complete six consecutive
22 clinical "clerkships" in core area of medical practice; and in the
23 fourth year, they take a series of more specialized clerkships.

24 6.  The clinical clerkships teach the students to integrate
25 their academic knowledge with the skills necessary to practice
26 medicine and test them on their progress in developing these

2

1  skills.

2      7.   Plaintiff completed his first two years of school on a
3  normal schedule, earning 8 C's, 19 B's and 11 A's.

4      8.   Plaintiff then passed his first National Board of Medical
5  Examiners' Examination in June, 1991.

6      9.   In June of 1991, plaintiff enrolled in the Surgery
7  Clerkship, which is one of the "core" clerkships which must be
8  completed during the third year of the medical school curriculum.

9      10.   Plaintiff failed the clerkship.

10     11.   As a result of his failure, plaintiff was directed to
11  appear before the Student Evaluations Subcommittee ("the SEC"), the
12  faculty body which monitors the progress of pre-clinical students.

13     12.   The SEC makes recommendations to another body, the
14  Promotions Board, which decides what action, if any, is necessary
15  for students with academic deficiencies.

16     13.   The Promotions Board recommended that plaintiff be
17  required to repeat the Surgery Clerkship in its entirety and that
18  he remain on probation until the quarter following the quarter in
19  which he completed his remediation.

20     14.  The Promotions Board further recommended that he continue
21  with his Internal Medicine Clerkship, but be evaluated at midterm
22  for possible withdrawal and remediation from that course.

23     15.   Plaintiff withdrew from the clerkship on or about
24  November 12, 1991.

25     16.   Plaintiff's instructor of record assigned the chief
26  resident to work with plaintiff in remedial sessions to practice

3

taking patient histories and making oral presentations; these sessions were to continue through the Winter Quarter.

17.   In the Spring Quarter of 1992, plaintiff requested time off for independent study due to the illness of his father.

18.   Dr. Ernest Lewis, the Associate Dean for Student Affairs, approved this request.

19.   Plaintiff returned to medical school in June 1992, completing his Psychiatry Clerkship with a grade of "B."

20.   Plaintiff subsequently passed his Pediatric Clerkship with a "C+" in the Summer/Fall Quarter of 1992.

21.   Plaintiff then proceeded with the Obstetrics/Gynecology ("OB/GYN") Clerkship, receiving a grade of "C."

22.   In January 1992, plaintiff began his second attempt to complete the Internal Medicine Clerkship.

23.   Because plaintiff's father died during this course, plaintiff was allowed to withdraw from that clerkship and to postpone further core clerkships until his family situation had settled.

24.   Plaintiff was then allowed to take a series of three fourth-year elective courses at hospitals in the San Francisco Bay Area so that he could be near his family.

25.   Plaintiff passed all three of these courses.

26.   In Summer Quarter 1993, plaintiff enrolled in the Internal Medicine Clerkship for the third time.

27.   Plaintiff failed the course.

////

4

1    28.  As a result of his failure, plaintiff was again called
2  before the SEC regarding his academic standing.

3    29.  On November 8, 1993, the Promotions Board, acting on
4  recommendations from the SEC, ruled that plaintiff must withdraw
5  from his then current clerkship.

6    30.  Plaintiff was required to seek a psychiatric evaluation
7  for depression, with a follow-up at the medical school's Counseling
8  Center.

9    31.  The Promotions Board required plaintiff to complete at
10 least three quarters of reading electives and to return to the SEC
11 for reevaluation regarding his academic standing after Winter
12 Quarter 1994.

13   32.  Plaintiff was also required to repeat his third year in
14 its entirety.

15   33.  In December 1993, Dr. Emil Rodolpha of the Counseling
16 Center performed a psychiatric evaluation of plaintiff.

17   34.  Dr. Rodolpha recommended that plaintiff be evaluated for
18 learning disabilities.

19   35.  In conjunction with Dr. Rodolpha's recommendation,
20 plaintiff went to the Disability Resource Center on the UCD campus
21 in November 1993, where he was screened for possible learning
22 disabilities.

23   36.  The screening resulted in a referral to Cherise
24 Northcutt, Ph.D., for testing to evaluate whether plaintiff had a
25 specific learning disability.

26 ////

5

37.   On December 4, 1993, plaintiff was diagnosed as having a learning disability.

38.   Dr. Lewis arranged for Margaret Steward, Ph.D., a psychologist and faculty member, to work with plaintiff regarding accommodations of his learning disability in preparation for the repetition of his third year courses.

39.   Dr. Steward counseled plaintiff, suggesting several coping strategies to help him deal with his disability.

40.   Plaintiff recommenced the Internal Medicine Clerkship for the fourth time in July of 1994.

41.   However, after attending an orientation session for the course, plaintiff requested an additional eight weeks off to prepare for his return to medical school.

42.   Dr. Lewis approved this request and plaintiff received additional time on the examination in the Internal Medicine Clerkship.

43.   Plaintiff passed the Internal Medicine Clerkship with a "B."

44.   Plaintiff was also allowed to take an additional eight weeks off before proceeding to his Surgery Clerkship, which commenced in January 1995, and additional time on the Surgery Clerkship examination.  Plaintiff received a "B" in that clerkship.

45.   Before beginning the Winter/Spring Quarter 1995, plaintiff requested additional time off to prepare for the next course he was to take, which was the Pediatrics Clerkship.

46.   Plaintiff's request was denied.

6

1        47.   Plaintiff failed the Pediatrics Clerkship.

2        48.   In May 1995, while plaintiff was repeating the OB/GYN
3   clerkship as required, he was again called before the SEC.

4        49.   The SEC recommended to the Promotions Board that
5   plaintiff be dismissed from the School of Medicine.

6        50.   On May 16, 1997, the Promotions Board recommended to the
7   Dean that plaintiff be dismissed.

8        51.   On May 17, plaintiff was notified that he was dismissed
9   from the School of Medicine.

10       52.   Although he has a learning impairment, plaintiff is not
11  disabled within the meaning of the law.

12       53.   The court has determined that under the law plaintiff was
13  not disabled within the meaning of the Americans with Disabilities
14  Act which is the statute under which plaintiff brings this action.
15  However, the statute also provides for a right to sue if you are
16  perceived to be a person with a disability, and are discriminated
17  against by virtue of that perception.   Thus, the issue that remains
18  for you the jury is whether or not Mr. Wong was perceived to be
19  disabled, and if so, whether he was discriminated against by virtue
20  thereof.    You will also be required to consider, should you
21  conclude that he was perceived to be disabled and was discriminated
22  against, what damages are appropriate.

23                    **IV.   DISPUTED FACTUAL ISSUES**

24       1.   Whether or not plaintiff displayed the symptoms of a
25  learning disability from a very young age and whether or not he was
26  diagnosed as suffering from speech and language difficulties in the

7

1  third or fourth grade.

2      2.  Whether or not, throughout plaintiff's entire academic
3  career prior to the clinical years of his medical school education,
4  plaintiff received any "accommodations" such as additional time to
5  take an exam.

6      3.  Whether or not, in middle school, plaintiff was assigned
7  to a class for assisted learning and whether or not in high school
8  and junior college, plaintiff regularly received extra time to
9  complete his examinations.

10     4.  Whether or not plaintiff's learning disability was
11  "basically [a] language disability" characterized by difficulty
12  hearing, understanding, processing and organizing verbal material
13  and "expressing verbally" what he knows and whether or not he was
14  also diagnosed as a "slow reader."

15     5.  Whether or not plaintiff's disability is in the area of
16  phonemic awareness, or knowing the sound that goes with each latter
17  of the alphabet and whether or not plaintiff's significant deficit
18  in phonemic awareness results in what is commonly referred to as
19  "one word at a time reading."

20     6.  Whether or not plaintiff has a deficiency in his ability
21  to organize, analyze and reduce or synthesize data when it must be
22  extracted from an information-rich environment and whether or not,
23  while this deficit has not prevented plaintiff from learning, it
24  demonstrates itself in the busy, sometimes chaotic clinical setting
25  where one is required to analyze and synthesize a great deal of
26  information in a short time.

8

7.    Whether or not plaintiff's third deficit is an awkward personal style when interacting with patients and whether or not, while this deficit would prevent him from working successfully with patients, it does not prevent him from learning or working in a variety of other jobs.

8.    Whether or not, while plaintiff may be precluded from working in a stressful environment requiring an ability to organize, analyze and reduce or synthesize data quickly and accurately in a short period of time, especially when the clarity of data presentation is often clouded by compromised presentation (i.e. sick patients) or chaotic surroundings (i.e. a hospital or geriatric psychiatric ward), jobs of this nature would be the only jobs from which plaintiff would be precluded.

9.    Whether or not plaintiff's deficits would serve as a bar to his employment, perhaps with additional educational training, in the following types of occupations, among others:   theoretical physicist, chemist, engineer, accountant, computer programmer, teacher, store manager or owner, librarian, financial planner, photographer, economist, administrative assistant, architect, data entry professional, purchasing agent, sales manager, botanist, geologist, carpenter, farmer, estate planner, journalist, real estate agent, travel agent, aid to developmentally disabled persons, residential housing director, rehabilitation worker, speech pathologist, legal researcher, medical researcher, pharmacist, forester, career counselor, or mail carrier.

////

9

1    10.  Whether or not plaintiff is "substantially limited" in
2   the major life activity of learning and whether or not plaintiff
3   can learn better than the average person because of his above-
4   average intelligence and his persistent hard work, a conclusion
5   strongly supported by his numerous and consistent success in high
6   school, college, graduate school and medical school.

7    11.  Whether or not the fact that plaintiff is a "slow reader"
8   has not substantially limited his ability to learn, read or enjoy
9   reading and whether or not in describing his reading habits in
10  recent years, plaintiff  indicated that he reads newspapers,
11  popular magazines, medical journals, and a variety of books which
12  he either purchases or borrows from one of two libraries (where he
13  spends approximately four hours a week) and whether or not the
14  subject matter of the books he purchases or borrows range from
15  medical texts, landscaping and gardening, to history, architecture,
16  archeology, military history and politics.

17      12.  Whether or not defendant regarded plaintiff as disabled
18  within the meaning of the Americans with Disabilities Act.

19      13.  Whether or not in September 19994, plaintiff re-enrolled
20  in the Medicine clerkship and whether or not he ultimately earned
21  a "B" in the course, and whether or not he was deemed to have
22  performed satisfactorily in all areas.

23      14.  Whether or not plaintiff received a 580 on the National
24  Board Examination, well above his group average (495)  and the
25  national average (460).

26  ////

10

1    15.   Whether or not the Instructor of Record for plaintiff's
2   Medicine clerkship in September 1994 believed that plaintiff had
3   "an excellent fund of knowledge," demonstrated "excellent retention
4   of material," and was a "solid third year medical student who was
5   assertive without being offensive, assumed responsibility, and
6   behaved in a professional, courteous fashion."

7    16.   Whether or not plaintiff requested and was granted time
8   to read prior to the Surgery Clerkship.

9    17.   Whether or not the Instructor of Record for plaintiff's
10  surgery clerkship noted that the Surgery Department thought that
11  plaintiff had everything that was required in order to become a
12  safe and effective physician.

13   18.   Whether or not, following Surgery, plaintiff was
14  scheduled to retake the Pediatrics clerkship and whether or not
15  three weeks prior to the end of his Surgery clerkship, plaintiff
16  requested time off prior to beginning Pediatrics.

17   19.   Whether or not Yukiko Clark, Dean Lewis' Assistant,
18  denied this request.

19   20.   Whether or not plaintiff then asked Clark to speak to
20  Dean Lewis and whether or not she told him to call back in a week.

21   21.   Whether or not when plaintiff called back, Clark told him
22  that Dean Lewis had denied his request.

23   22.   Whether or not either Dean Lewis or Clark asked plaintiff
24  about his experiences in Pediatrics the first time he took that
25  clerkship.

26  ////

11

1    23.   Whether or not plaintiff later repeated his request for
2  extra time to study prior to his clerkships.

3    24.   Whether or not Dean Lewis initially told plaintiff that
4  he could take electives between his clerkships so that plaintiff
5  could have more time for reading.

6    25.   Whether or not later, Dean Lewis refused to allow
7  plaintiff to take electives between his clerkships, and refused to
8  allow him any extra time to study between clerkships.

9    26.   Whether or not the Pediatrics clerkship has gotten more
10  difficult over the past five or six years.

11    27.   Whether or not, the second time that plaintiff took
12  Pediatrics, his experience was significantly different than the
13  previous time he had enrolled in this clerkship and whether or not,
14  unlike the first time, plaintiff did not have any time for extra
15  reading prior to beginning the clerkship.

16    28.  Whether or not another significant change the second time
17  plaintiff took the Pediatrics clerkship was that he was required
18  to take "wards" (the portion of the clerkship involving patients
19  staying overnight at the hospital, usually with more complex and
20  difficult diseases) during the first four weeks of the clerkship,
21  thus permitting him less time to read early in the clerkship and
22  whether or not the first time that plaintiff took Pediatrics, he
23  had had "clinics" (the portion of the clerkship dealing with walk-
24  in patients) during the first four weeks of the clerkship, allowing
25  him more time to read early in the clerkship.
26  ////

1    29.   Whether or not a third significant change was that in his
2   second time thought the Pediatrics clerkship, the wards portion of
3   the course was held at U.C. Davis Medical Center where the patient
4   load was much higher, and the diseases were much more complex than
5   they had been at Travis Air Force Base, where plaintiff had first
6   taken the clerkship in 1992 and whether or not during his second
7   time through the Pediatrics clerkship, plaintiff found he had to
8   do much more reading, with less time to do it in, on account of the
9   more complex nature of the diseases and patient load.

10    30.   Whether or not during his second time through the
11   Pediatrics clerkship, plaintiff was extremely ill, suffering from
12   a series of flu-like colds over a period of weeks and whether or
13   not this illness was severe enough that plaintiff required IV
14   volume replacement because he was unable to eat or drink much.

15    31.   Whether or not, as a result, plaintiff was unable to
16   study for approximately two weeks during the beginning of the
17   clerkship.

18    32.   Whether or not, prior to the SEC meeting that resulted
19   from Wong's "Y" in Pediatrics, Dean Lewis told plaintiff not to
20   mention the fact that Lewis had denied Wong's request for an
21   accommodation and whether or not Dean Lewis told plaintiff not to
22   mention the fact that he was not to blame for certain narcotics
23   errors.

24    33.   Whether or not any records are kept of SEC meetings.
25    34.   Whether or not, prior to the SEC meeting which
26   recommended plaintiff's dismissal, Dean Lewis had decided that the

13

SEC was going to discuss a recommendation to dismiss plaintiff.

35. Whether or not plaintiff's advisor, Dr. Flynn, and his proxy at the SEC meeting, Dr. Romano, felt that plaintiff should have been given another chance.

36. Whether or not Dean Lewis makes presentations to the Promotions Board regarding SEC recommendations.

37. Whether or not Dean Lewis' office normally provides all of the staff and clerical support for Promotions Board meetings.

38. Whether or not Dean Lewis' opinion carried "a lot of weight" or "significant weight" at plaintiff's Promotions Board meeting.

39. Whether or not Dean Lewis presented the recommendations of the Promotions Board and the SEC regarding plaintiff to Dean Lazarus.

40. Whether or not Dean Lazarus relied upon Dean Lewis to make sure that procedures were followed appropriately with respect to the recommendation to dismiss plaintiff.

41. Whether or not Dean Lazarus approved the recommendation to dismiss plaintiff without considering whether additional accommodations were possible.

42. Whether or not Dean Lewis wrote the letter which Dean Lazarus signed, officially dismissing plaintiff from UCD SOM.

43. Whether or not UCD SOM regularly permitted students to take time off between courses for different reasons including both personal and academic.

////

14

1      44.   Whether or not plaintiff was otherwise qualified to
2    continue his study at UCD SOM.

3      45.   Whether or not plaintiff's request for an accommodation
4    was reasonable.

5      46.   Whether or not administrators and faculty perceived
6    plaintiff to be "disabled," i.e., substantially limited in the
7    major life activities of either working, learning or reading.

8      47.   Whether or not, if administrators and faculty regarded
9    plaintiff as "disabled," that perception was the sole basis of
10   their decision to dismiss plaintiff from UCD SOM.

11                   **V.   DISPUTED EVIDENTIARY ISSUES**

12       Each party is to bring on its motions in limine not later ten
13   (10) days after the court issues its final pretrial order.   The
14   motions are to be set by the parties on this court's regularly
15   scheduled law and motion calendar.  If time does not permit, then
16   the matter will be heard on the first day of trial after selection
17   of the jury but before receipt of evidence.

18                       **VI.   RELIEF SOUGHT**

19       Plaintiff seeks the following:

20       a.   A permanent injunction restoring plaintiff to the School
21   of Medicine and enjoining defendant from abridging his rights by
22   denying him requests for accommodation;

23       b.   An award of compensatory damages; and

24       c.   An award of reasonable attorneys' fees and costs.

25       Defendant seeks judgment in their favor.

26   ////

                                   15

1

## VII.   POINTS OF LAW

2      Trial briefs shall be filed with the court no later than
3 fourteen (14) days prior to the date of trial in accordance with
4 Local Rule 16-285.  The parties shall brief the following points
5 of law in their trial briefs:

6      A.   The elements, standards and burdens of proof relative to
7 a claim for being "regarded as" disabled within the meaning of the
8 Americans with Disabilities Act, 42 U.S.C. § 12101 et seq., under
9 the facts and circumstances of this case; and

10      B.   Remedies available under the facts and circumstances of
11 this case.

12      ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY
13 ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT
14 BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

15

## VIII.   ABANDONED ISSUES

16

17      Plaintiff has abandoned any claim based upon race
18 discrimination.

19      Defendant abandons its second affirmative defense based on the
20 statute of limitations and its seventh affirmative defense based
21 on latches.

22

## IX.   WITNESSES

23      Plaintiff anticipates calling the following witnesses:   See
24 Attachment "A."

25      Defendant anticipates calling the following witnesses:   See
26 Attachment "B."

1    Each party may call a witness designated by the other.

2    A.    No other witnesses will be permitted to testify unless:

3        (1)    The party offering the witness demonstrates that the

4    witness is for the purpose of rebutting evidence which could not

5    be reasonably anticipated at the Pretrial Conference, or

6        (2)    The witness was discovered after the Pretrial

7    Conference and the proffering party makes the showing required in

8    "B" below.

9    B.    Upon the post-Pretrial discovery of witnesses, the

10   attorney shall promptly inform the court and opposing parties of

11   the existence of the unlisted witnesses so that the court may

12   consider at trial whether the witnesses shall be permitted to

13   testify.   The evidence will not be permitted unless:

14       (1)    The witnesses could not reasonably have been

15   discovered prior to Pretrial;

16       (2)    The court and opposing counsel were promptly

17   notified upon discovery of the witnesses;

18       (3)    If time permitted, counsel proffered the witnesses

19   for deposition;

20       (4)    If time did not permit, a reasonable summary of the

21   witnesses' testimony was provided opposing counsel.

22                    **X.    EXHIBITS, SCHEDULES AND SUMMARIES**

23    At present, plaintiff contemplates the following by way of

24   exhibits:   See Attachment "C."

25    At present, defendant contemplates the following by way of

26   exhibits:   See Attachment "D."

17

1    A.    No other exhibits will be permitted to be introduced
2  unless:

3         (1)   The party proffering the exhibit demonstrates that
4  the exhibit is for the purpose of rebutting evidence which could
5  not be reasonably anticipated at the Pretrial Conference, or

6         (2)   The exhibit was discovered after the Pretrial
7  Conference and the proffering party makes the showing required in
8  paragraph "B," below.

9    B.    Upon the post-Pretrial discovery of exhibits, the
10 attorneys shall promptly inform the court and opposing counsel of
11 the existence of such exhibits so that the court may consider at
12 trial their admissibility.   The exhibits will not be received
13 unless the proffering party demonstrates:

14        (1)   The exhibits could not reasonably have been
15 discovered prior to Pretrial;

16        (2)   The court and counsel were promptly informed of
17 their existence;

18        (3)   Counsel forwarded a copy of the exhibit(s) (if
19 physically possible) to opposing counsel.   If the exhibit(s) may
20 not be copied, the proffering counsel must show that he has made
21 the exhibit(s) reasonably available for inspection by opposing
22 counsel.

23    As to each exhibit, each party is ordered to exchange copies
24 of the exhibit not later than fifteen (15) days from the date of
25 this Pretrial Order.  Each party is then granted ten (10) days to
26 object to said exhibit.  In making said objection, the party is to

18

set forth the grounds for the objection.  The attorney for each party is directed to appear before and present an original and one (1) copy of said exhibit to Sharon Jaggard, Deputy Courtroom Clerk, not later than 8:30 a.m. on the date set for trial.  As to each exhibit which is not objected to, it shall be marked and received into evidence and will require no further foundation.  Each exhibit which is objected to will be marked for identification only.

## XI.   DISCOVERY DOCUMENTS

Plaintiff anticipates the introduction of defendant's answers to interrogatories number 5(a)-(e) in his case-in-chief.

Defendant shall forward to the court and opposing counsel within ten (10) day from the date of this order a list specifying the documents it intends to introduce in its case-in-chief.

## XII.   FURTHER DISCOVERY OR MOTIONS

Pursuant to the court's Status Conference Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Pretrial Conference.  That order is confirmed.  The parties are, of course, free to do anything they desire pursuant to informal agreement. However, any such agreement will not be enforceable in this court.

## XIII.   STIPULATIONS

None.

## XIV.   AMENDMENTS/DISMISSALS

None, except as set forth above.

////

////

19

1              **XV.   FURTHER TRIAL PREPARATION**

2         A.    Counsel are directed to Local Rule 16-285 regarding the

3    contents of and the time for filing trial briefs.

4         B.    Counsel are informed that the court has prepared a set

5    of standard jury instructions.  In general, they cover all aspects

6    of the trial except those relating to the specific claims of the

7    complaint.   Accordingly, counsel need not prepare instructions

8    concerning matters within the scope of the prepared instructions.

9    A copy of the prepared instructions is given to the parties at the

10   Pretrial Conference.

11        C.    Counsel are further directed that their specific jury

12   instructions shall be lodged with the court clerk fourteen (14)

13   calendar days prior to the date of trial.  As to any instructions

14   counsel desires to offer, they shall be prepared in accordance with

15   Local Rule 51-163(b) which provides:

16                    "Three (3) copies of the instructions

17              shall be lodged on 8-1/2" x 11" paper.   The

18              first two (2) copies (file copy and chamber's

19              copy) shall be identical and shall contain

20              each instruction written on a separate page,

21              numbered and identified as to the party

22              presenting it.   Each instruction shall cite

23              the decision, statute, ordinance, regulation

24              or other authority supporting the proposition

25              stated in the instruction.   The third copy

26              (jury copy) shall be lodged with a cover

                              20

1            sheet.   The cover sheet shall contain the

2            appropriate caption (title, Court and cause)

3            and an identification of the party presenting

4            said instructions. The instructions submitted

5            for  jury  use  shall  be  each  written  on  a

6            separate page and shall be in the same order

7            as  the  file  copy  instructions.   As  these

8            instructions  may  be  duplicated  and  passed

9            along to the jury, the individual instruction

10           shall be unnumbered and unidentified as to the

11           party presenting them and shall contain no

12           citation  to  the  authority  supporting  the

13           proposition stated in the instruction."

14 **In addition, counsel shall provide copies of proposed forms of**

15 **verdict, including special verdict forms, at the time the proposed**

16 **jury instructions are lodged with the court.**

17      D.   It is the duty of counsel to ensure that any deposition

18 which is to be used at trial has been filed with the Clerk of the

19 Court.  Counsel are cautioned that a failure to discharge this duty

20 may  result  in  the  court  precluding  use  of  the  deposition  or

21 imposition of such other sanctions as the court deems appropriate.

22      E.   The parties are ordered to file with the court and

23 exchange between themselves not later than one (1) week before the

24 trial a statement designating portions of depositions intended to

25 be offered or read into evidence (except for portions to be used

26 only for impeachment or rebuttal).

1    F.    The parties are ordered to file with the court and
2 exchange between themselves not later than one (1) week before
3 trial the portions of answers to interrogatories which the
4 respective parties intend to offer or read into evidence at the
5 trial (except portions to be used only for impeachment or
6 rebuttal).

### XVI.    SETTLEMENT NEGOTIATIONS

8    A Settlement Conference is **SET** before the Honorable Peter A.
9 Nowinski on April 2, 2001, at 9:00 a.m.  Counsel are directed to
10 submit settlement conference statements to the settlement judge **not**
11 **later than seven (7) days prior to the conference.**  At counsel's
12 option, such statements may be submitted in confidence pursuant to
13 Local Rule 16-270(d).

14    Each party is directed to have a principal capable of
15 disposition at the Settlement Conference or to be fully authorized
16 to settle the matter on any terms and at the Settlement Conference.

### XVII.    AGREED STATEMENTS

18    None.

### XVIII.    SEPARATE TRIAL OF ISSUES

20    None.

### XIX.    IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

22    None.

### XX.    ATTORNEYS' FEES

24    The matter of the award of attorneys' fees to prevailing party
25 pursuant to statute will be handled by motion in accordance with
26 Local Rule 54-293.

1    **XXI. MISCELLANEOUS**

2        None.

3    **XXII. ESTIMATE OF TRIAL TIME/TRIAL DATE**

4        Trial by jury is **SET** for May 15, 2001, at 10:00 a.m., in

5    Courtroom No. 4.    The parties represent in good faith that the

6    trial will take approximately ten (10) days.

7        Counsel are to call Sharon Jaggard, Courtroom Deputy, at (916)

8    930-4133, one week prior to trial to ascertain status of trial

9    date.

10    **XXIII. OBJECTIONS TO PRETRIAL ORDER**

11        Each party is granted fifteen (15) days from the effective

12    date of this Pretrial Order [Tentative] to object to or augment

13    same.    Each party is also granted five (5) days thereafter to

14    respond to the other party's objections.    If no objections or

15    additions are made, the Tentative Pretrial Order will become final

16    without further order of the court.

17        The parties are reminded that pursuant to Federal Rule of

18    Civil Procedure 16(e), this order shall control the subsequent

19    course of this action and shall be modified only to prevent

20    manifest injustice.

21    ////

22    ////

23    ////

24    ////

25    ////

26    ////

1

## XXIV.   OTHER

2      All time limits and dates that refer to the Pretrial Order

3 refer to the date this Pretrial Order [Tentative] is filed and not

4 the date an amended order, if any, is filed.

5      IT IS SO ORDERED.

6      DATED:   March 5, 2001.

7                                        _____
                                         LAWRENCE K. KARLTON
8                                        SENIOR JUDGE
                                         UNITED STATES DISTRICT COURT
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

## EXHIBIT A

Plaintiff Andrew Wong, 1854 Bahia Street, San Mateo 94403

Anna Wong, same address

Annette Wong, 855 Nisqually Drive, Sunnyvale, CA 94087

Albert Wong, 795 Schembri Lane, East Palo Alto, CA 94303

Angela Spell, 413 Alida Way, South San Francisco, CA 94080

Sherry Zukle, 142 La Mirage Circle, Aliso Viejo, CA 92656

Warren Choy, 5410 Spencer Lane, Granite Bay, CA 95746

Expert Witnesses

M. Kay Runyan, Ph.D., Runyan & Associates, 3150 California Street, Suite 7, San Francisco, CA.

Thomas P. Yankowski, M.S., C.V.E., 1330 Broadway, Suite 936, Oakland, CA

Bianca Z. Hirsch, Ph.D., 115 San Anselmo Avenue, San Francisco, CA

Individuals Associated with UCD (home addresses unknown)

Kathleen Baynes

Kathleen Chance, M.D.

Yukiko Clark

Geo Ewing, M.D.

George Jordan, M.D.

Robin Hansen, M.D.

James Holcroft, M.D.

George Jordan, M.D.

Ruth Lawrence, M.D.

Gerald Lazarus, M.D.

Ernest Lewis, M.D.

*ATTACHMENT "A"*

1    Sudesh Makker, M.D.

2    Cherise Northcutt, Ph.D.

3    Christine O'Dell

4    Emil Rodolfo, Ph.D.

5    Patrick Romano, M.D.

6    Frederic Royce, M.D.

7    Donna Sachs, Ph.D.

8    Joseph Silva, M.D.

9    Margaret Steward, Ph.D.

10   Donal Walsh, M.D.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**PLAINTIFF'S LIST OF WITNESSES**

-2-

## ATTACHMENT A

### WITNESS LIST

The defense intends to call the following witnesses:

(1)     Dr. Ernest Lewis, Academic Dean of the University of California, Davis School of Medicine,

(2) Andrew Wong, plaintiff

(3) Emil Rodolpha

(4) Mark Lipian, M.D., expert witness

(5) Robin Hanson, M.D.

(6) James W. Holcroft, M.D.,

(7) Fred H. Royce, M.D.

(8) Ruth Lawrence, M.D.

(9) Patrick Twomey, M.D.

(10) Neil Flynn, M.D.

(11) William Birdsong, M.D.

(12) Dr. Richard Poor, M.D.

(13) George Jordan, M.D.

(14) Patrick Ramono, M.D.

(15) Harry Matthews, M.D.

*ATTACHMENT "B"*

**EXHIBIT B**

1. 10/26/88 letter to Health Professional Advising Committee from John S. Williston

2. 12/9/88 letter to Application Review Committee Member from Geoffrey Wilson

3. . 12/29/88 Recommendation letter from Paul Lieber

4. AMCAS Application 1989

5. 1/15/89 UCD School of Medicine Supplementary Personal Comments

6. 8/18/89 letter to Andrew Wong from Ernest Lewis

7. 6/91 National Board of Medical Examiners Report of Score – Comprehensive Part 1

8. 7/27/91 Student Evaluation by James Holcroft

9. 10/18/91 Letter to Promotions Board from James W. Holcroft

10. 10/18 /91 Letter to Andrew Wong from Ernest Lewis

11. 10/25/91 Committee on Student Promotions and Evaluation Promotions Board B Minutes page 6 & 7

12. 11/1/91  Memo from Ruth Lawrence to Frederick Meyers

13. 11/13/91 letter to Ernest Lewis from Ruth Lawrence

14. 12/19/91 letter to Ruth Lawrence from Al Newton

15. 1/3/92 Phone Memo from Andrew Wong to ELL

16. 3/25/92 Note to the Record of Andrew Wong from Ernest Lewis

17. 4/13/92 Note to the Record of Andrew Wong from Ernest Lewis

18. 4/13/92 letter to Trish Layton from Yukiko Clark

19. 2/8/93  Personal Characteristics evaluation

20. 3/4/93 Note to the Record of Andrew Wong from Ernest Lewis

21. 6/3/93 letter to Andrew Wong from Ernest Lewis

22. 8/26/93 Note to the Record of Andrew Wong from Ernest Lewis

23. 10/14/93 letter to Andrew Wong from Ernest Lewis

*ATTACHMENT "C"*

24. 10/28/93 Committee on Student Promotion and Evaluation Promotion Board Review

25. 11/11/93 Note to the Record

26. 11/20/93 UCD Disability Resource Center Learning Disability Questionnaire

27. 12/2/93 Note to the Record of Andrew Wong by Ernest Lewis

28. 12/2/93 Memo by Chris O'Dell re. Andrew Wong

29. 12/4/93 Psychological Evaluation of Andrew Wong by Cherise Northcutt w/notes and attachments

30. 12/8/93 UCD Disability Resource Center Confidential Student Information Sheet

31. 12/8/93 Note from "Chris" re. Andrew Wong

32. 12/6/93 Psychological Report by Mark Chamberlain

33. 12/11/93 Evaluation of Andrew Wong from Emil Rodolfa to Ernie Lewis

34. 1994-1995 Student Evaluation Subcommittee Membership List

35. 1/6/94 Note to the Record

36. 1/27/94 Committee on Student Promotion and Evaluation Promotion Board B re: Andrew Wong

37. 2/14/94 letter to Kathleen Baynes from Margaret Steward

38. 2/22/94 Neuropsychological Evaluation

39. 4/14/94 letter to Ernest Lewis from Margaret Steward

40. 4/21/94 Note to the Record

41. 5/9/94 Letter to Andrew Wong from Ernest Lewis

42. 5/14/94 letter to Ernest Lewis from Margaret Steward

43. 5/23/94 Letter to Andrew Wong from Ernest Lewis

44. 6/27/94 Memo to Emil from Donna

45. 7/1/94 Note to the Record of Andrew Wong from Ernest Lewis

46. 7/1/94 letter to Dr. Lewis from Andrew Wong

**PLAINTIFF'S LIST OF EXHIBITS**

1    47.    8/2/94 Counselor Intake sheet

2    48.    12/31/94 UC Revised Guidelines for the Assessment and Accommodation of Students

3    with Learning Disabilities

4    49.    3/22/95 letter to Ernie Lewis from Robin Hansen

5    50.    3/22/95 letter to Andrew Wong from Ernest Lewis

6    51.    4/13/95 Department of Surgery Final Grade Sheet

7    52.    4/21/95 Department of Pediatrics Oral Exam Score Sheet

8    53.    5/9/95 letter to Student Evaluation Committee from Neil Flynn

9    54.    5/9/95 letter to Student Evaluation Subcommittee from William Birdsong

10    55.    5/11/95 Student Evaluation Subcommittee Recommendations

11    56.    5/15/95 letter to the Promotions Board from Andrew Wong

12    57.    5/16/95 Committee on Student Promotions and Evaluation Promotion Board B

13    Agenda

14    58.    5/16/95 Executive Summary of Promotion Board B Actions

15    59.    5/16/95 letter to Gerald Lazarus from George Jordan

16    60.    5/16/95  Committee on Student Promotions and Evaluations Promotion Board B Agenda

17    and attachments, including Bates no. 086

18    61.    5/16/95  Committee on Student Promotions and Evaluations Promotion Board B Minutes

19    62.    5/16/95  Committee on Student Promotions and Evaluations Promotion Board B Notes

20    63.    5/17/95 letter to Andrew Wong from Gerald Lazarus

21    64.    6/24/96 letter to Angela Spell from Ernest Lewis

22    65.    9/13/00 M. Kay Runyan Expert Witness Report

23    66.    9/13/00 Bianca Hirsch Psycho-Educational Report

24    67.    9/14/00  Center for Career Evaluations, Inc. Vocational Consultation Report

25    68.    Academic Summary

**PLAINTIFF'S LIST OF EXHIBITS**

69. Grade Report

70. Resources for Students with Disabilities

71. Handwritten Notes entitled "To the promotions board c/o Dr. Lewis"

72. Health Professionals for Fairness & Progress Position Statement

73. Letter to Promotions Board from Kathleen Chance

74. UCD School of Medicine Academic Summary

75. M. Kay Runyan-CV

76. Mark Steven Lipian – CV

77. James C. Wilson – CV

78. Glenn A. Hammel – CV

79. Office of Student Affairs Admissions Office School of Medicine Information for Accepted Applicants

80. Office of Student Affairs Interview Information

81. UCD School of Medicine Requirement Questionnaire for applicant

82. Letter to Medical School Admissions Officer from Robert Schmidt

83. Bylaws of the School of Medicine

84. Curriculum for the M.D. degree

85. National Board of Medical Examiners Comprehensive Part I Report of Scores

86. Rules of the Game

87. Student Evaluation by Patrick Twomey

88. Student Evaluation by Ernest Lewis

89. San Mateo Community College Academic Transcript

90. San Francisco State University transcripts page 1 & 2

91. Memo from Geo N. Ewing

92. Neuropsychological Evaluation of Andrew Wong

**PLAINTIFF'S LIST OF EXHIBITS**

93. MDS430 Evaluations (Bates nos. 26-29)

94. MS431 Preliminary Reports (Bates nos. 1068-69; 1108-1113; 1121)

95. Final Grade Sheet (Bates no. 025)

96. Final Grade Sheet (Bates no. 024)

97. MS432A Preliminary Reports (Bates nos. 968-977)

98. Final Grade Sheet (Bates nos. 023)

99. MDS431 Preliminary Reports (Bates nos. 1021-1027; 1057; 1064; 1116)

100. FAP440 Evaluations (Bates nos. 946-950)

101. NEU451 Evaluation Form (Bates no. 014)

102. CMH Evaluation Form (Bates nos. 012-13; 015-16)

103. Final Grade Sheet (Bates no. 010)

104. Final Grade Sheet (Bates no. 1037)

105. MDS431 Preliminary Report (Bates nos. 1028-1048; 1055; 1115; 1173-1178)

106. IMD430 Preliminary Reports (008; 1004-1007; 1015-1020; 1126-1138)

107. Final Grade Sheet (Bates no. 007)

108. Final Grade Sheet (Bates nos. 003-004; 005-006)

109. PED430 Preliminary Report (Bates nos. 1249-1292)

110. OB/GYN Preliminary Reports (Bates nos. 955-964; 966-967)

**PLAINTIFF'S LIST OF EXHIBITS**

## ATTACHMENT B

### Exhibits

| | |
|---|---|
| A. | 2-page Final Grade Sheet Bate stamped GR00003-00004 |
| B. | Final Grade Sheet GR00005-00006 |
| C. | Final Grade Sheet GR00009 |
| D. | Student Evaluations Bate stamped GR00018-00022 |
| E. | Final Grade Sheets GR00023-00025 |
| F. | Surgery Clerkship Final Evaluation GR00026-00029 |
| G. | NVME Report of Scores GR00032 |
| H. | May 16 Memorandum to Dean Lazarus Bate Stamped GR00049 |
| I. | Undated Letter from Andrew Wong GR00050-00051 |
| J. | 5/9/95 Letter from Neil Flynn GR00053-00054 |
| K. | 5/9/95 Confidential Letter from William Birdsong GR00055-00056 |
| L. | 5/17/95 Letter to Andrew Wong from Dean Lazarus GR00065 |
| M. | Memorandum from George Jordan to Promotion Board 5/16/95 GR00066 |
| N. | Promotion Board B minute 5/16/95 GR00068 |
| O. | Memo to Dr. Lewis from Dr. Hanson 3/22/95 GR00071 |
| P. | 8/11/94 Letter to Andrew Wong GR00075 |
| Q. | Note to the Record 7/1/94 GR00082 |
| R. | Handwritten Note to Dr. Lewis GR00083 |
| S. | Letter to Andrew Wong GR00085 |
| T. | Note to the Record 4/21/95 GR00087 |
| U. | Note to the Record 1/6/94 GR00095 |
| V. | Note to the Record 12/2/93 GR00096 |
| W. | Note to the Record 11/11/93 GR00098 |
| X. | 11/8/93 Letter to Andrew Wong GR00099-000100 |
| Y. | Promotion Board Review GR00101 |
| Z. | Note to the Record GR00103 |
| 2A | Note to the Record 3/4/93 GR00108 |
| 2B | Note to the Record 4/13/92 GR00113 |
| 2C | Note to the Record 3/25/92 GR00114 |
| 2D | Note to the Record 1/13/92 GR00116 |
| 2E | Phone Memo GR00117 |
| 2F | 11/1/91 Letter from Dr. Meyers GR00120 |
| 2G | Note to the Record 11/18/91 GR00119 |
| 2H | 10/25/91 Portion of Promotion Board B Minutes GR00121-00123 |
| 2I | AMCASF Location GR00132-00136 |
| 2J | 10/6/93 Letter from Ernest Lewis from Ruth Laurence GR00168-00169 |
| 2K | Memo to Dr. Lewis from Dr. Laurence GR00170 |
| 2L | Midterm Evaluation Worksheet 5/17/93 GR00171 |
| 2M | Memo to Dr. Lewis from Dr. Laurence 11/13/91 GR00174-00175 |
| 2N | 10/18/91 Memo from Dr. Holcroft GR00176 |
| 2O | School of Medicine Bylaws and Regulations GR00181-00216 |
| 2P | 5/25/95 Memo from Ernest Lewis GR00952 |

*ATTACHMENT "D"*

| | |
|---|---|
| 2Q | OB/GYN Clerkship Final Grade Sheet GR00955 |
| 2R | Rater Comments GR00956 |
| 2S | OB and GYN Clerkship Preliminary Reports GR00957-00964 and GR00966 |
| 2T | Internal Medicine Clerkship Worksheet GR01005-01007 |
| 2U | Internal Medicine Student Performance Evaluations GR01008-01013 |
| 2V | Medicine Student Evaluation GR01021-01038 |
| 2W | 7/26/93 Memo to Dr. Lewis from Dr. Laurence GR01040 |
| 2X | Medicine Student Evaluation GR01041-01048 |
| 2Y | Grading Sheets Stations 1-5 GR01049-01054 |
| 2Z | Medicine Student Evaluations GR01058-01063 |
| 3A | Student Evaluations-South Kaiser GR01070-01073 |
| 3B | Memo to Dr. Lawrence from Dr. Meyers GR01076 |
| 3C | Memo to Andrew Wong from Dr. Lewis GR01078 |
| 3D | Summary of Comments GR01080-01081 |
| 3E | South Kaiser Student Evaluation GR01083- |
| 3F | Summary of Comments GR01119 |
| 3G | Midterm Evaluation Worksheet—Medicine GR01120 |
| 3H | Evaluators Written Comments PED Clerkship GR1249-1252 |
| 3I | Third Year Student Evaluation – PEDS GR01253-01292 |
| 3J | Plaintiff's Responses to THE REGENTS Interrogatories, Set One |
| 3K | Preliminary Pediatrics Report, Winter/Spring 1995 |
| 3L | 10/06/97, 3/21/95 Memorandum from R. Royce to Robin Hansen |
| 3M | M05 430 Student Evaluation by J. Holcroft., M.D. 7/01/91 through 7/26/91 |
| 3N | Midterm Evaluation Worksheet, GR01239 |

2

LTR-006213712204711

**INSTRUCTION NO.** ___01___

Ladies and Gentlemen of the Jury:

It now becomes my duty to instruct you on the law. It is your duty as jurors to follow the law and apply it to the evidence in the case.

You are required to follow the law whether you agree with it or not.

In following the law, you must consider all of the instructions and not single out some and ignore the others; all of the instructions are equally important.

1

**INSTRUCTION NO.** ___02___

You are the sole judges of the evidence in this case and it is up to you to evaluate the witnesses and other evidence. You are to perform this duty without bias, sympathy, prejudice, or what you think public opinion might be. You must impartially consider all the evidence in the case, following the law as stated in these instructions.

2

**INSTRUCTION NO.** ___O3___

This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. The law is no respecter of persons; all persons stand equal before the law, and are to be dealt with as equals in a court of justice.

3

**INSTRUCTION NO.** ___O4___

A corporation is entitled to the same fair trial at your hands as a private individual.

4

**INSTRUCTION NO.** ____65____

Unless otherwise stated, the jury should consider each instruction given to apply separately and individually to each plaintiff and to each defendant in the case.

**INSTRUCTION NO.** ____66____

Even though there is more than one defendant in this case, you must decide each case against each defendant separately. For that reason, you cannot decide that just because one defendant is liable, another defendant is liable. Unless I tell you otherwise, all instructions which I give you apply to each defendant.

6

**INSTRUCTION NO.** ___57___

You do not have to decide any issue of fact in favor of the side that brought more witnesses or evidence to trial.

The test is which witnesses, and which evidence, convinces you because it is most believable.

In deciding contested issues, you should keep in mind who has the burden of proof on that issue as well as the applicable standard of proof under the law.

**INSTRUCTION NO.** ____08____

There are two kinds of evidence, direct and circumstantial. Direct evidence is where a witness testifies to having actual knowledge of a fact. Circumstantial evidence is a chain of evidence from which you could find that another fact exists, even though no one directly testified as to that fact.

How much you believe evidence should not depend on whether it is direct or circumstantial, but on whether the evidence is trustworthy and reliable. For that reason, you may find a fact has been proven by circumstantial evidence if that conclusion seems reasonable to you.

**INSTRUCTION NO.** __09__

The evidence in this case consists of the sworn testimony of the witnesses and all exhibits received into evidence.

You are to consider only the evidence admitted in the case. If the evidence has been admitted for a limited purpose, you are to consider it only for that purpose. You must not consider for any purpose evidence as to which an objection was sustained by the Court, any evidence ordered stricken by the Court, or anything that you have seen or heard outside the courtroom. The arguments and questions of counsel are not evidence and a question may be considered only as it gives meaning to the answer.

**INSTRUCTION NO.** \_\_\_\_10\_\_\_\_

When the attorneys on both sides stipulate or agree to the existence of a fact, you must regard that fact as proven.

10

**INSTRUCTION NO.** _\_\_11\_\_\_\_

      I have taken judicial notice that certain facts are true.  When the Court declares it will take judicial notice of some fact or event, you must accept the Court's declaration as true.

11

**INSTRUCTION NO.** _____12_____

Certain testimony has been read into evidence from a deposition. A deposition is testimony taken under oath before the trial and preserved in writing. You are to consider that testimony as if it had been given in Court.

12

**INSTRUCTION NO.** \_\_\_\_**13**\_\_\_\_

During the trial you heard reference made to the word "interrogatory." An interrogatory is a written question asked by one party of another, who must answer it under oath in writing. You are to consider interrogatories and the answers to them as if the questions had been asked and answered here in Court.

13

**INSTRUCTION NO.** 14

    As permitted by law, the parties served each other with written requests for the admission of the truth of certain matters of fact.  You must regard as proven any fact which was expressly admitted by a party or which that party failed to deny.

14

**INSTRUCTION NO.** ___15___

In deciding what the facts are, you must consider all the evidence. In doing this, you must decide which testimony to believe and which testimony to reject. You may disbelieve all or any part of any witness' testimony. In making that decision, some of the things you may consider include:

(1)     Was the witness able to see, hear, or know the things about which the witness testified?

(2)     How good is the witness' memory and is the witness able to testify clearly?

(3)     Was the witness' manner while testifying straightforward and convincing, or evasive and unconvincing?

(4)     Did the witness have an interest in the outcome of the case or any bias or prejudice concerning anyone or anything that mattered in the case, and if so, did that interest or bias affect the testimony?

(5)     How reasonable was the witness' testimony when you consider it in light of all the other evidence in the case?

(6)     Was the witness' testimony contradicted by what that witness said or did at another time, or by the testimony of other believable witnesses or evidence?

In deciding whether or not to believe a witness, remember that people sometimes forget things or sometimes get confused. Because of that, you have to consider whether a contradiction is an innocent lapse of memory; and that may depend on whether it has to do with an important fact that someone would not be likely to forget or some small detail.

15

**INSTRUCTION NO.** __16__

     If a witness is shown knowingly to have testified falsely about any fact important to this case, you have a right to distrust the rest of the witness' testimony. On the other hand, you may accept any part of the testimony of that witness that you believe truthful.

16

**INSTRUCTION NO.** ___17___

A witness who has special knowledge, skill, experience or education in a particular field may give an opinion as an expert as to any matter in that field and explain the reasons for that opinion.  In deciding how persuasive that opinion is, you should consider the qualifications of the expert, how believable the expert was, and the reasons given for the opinion.  You don't have to agree with an expert's opinion, and you only have to give it the effect on your judgment that you think it deserves.

17

**INSTRUCTION NO.** __18__

If only one side can produce evidence or call a witness and did not do so, that may lead you to believe that the testimony or evidence would be unfavorable to that party.  However, it would not be proper to reach that conclusion if the evidence was equally available to both parties, or where the evidence would be no more than what was already in evidence.

18

INSTRUCTION NO. ___19___

In these instructions I will tell you that either the plaintiff or the defendant has the burden of proving certain issues. The party having the burden of proof on an issue must prove it by a "preponderance of the evidence."

By a preponderance of the evidence is meant the evidence which is more convincing and more probably true. If the evidence as to any issue is evenly balanced, your finding upon that issue must be against the party who had the burden of proving it.

In determining whether an issue has been proved by a preponderance of the evidence, you should consider all of the evidence having to do with that issue regardless of who produced it.

19

**INSTRUCTION NO. ___20___**

Nothing I have said during the trial or in these instructions and nothing in the verdict form is meant to suggest to you what verdict I think you should find.  What the verdict shall be is the exclusive responsibility of the jury.

20

**INSTRUCTION NO.** ___21___

The verdict must represent the considered judgment of each juror and must be unanimous.

Each of you must decide the case for yourself, but only after consulting with each other and impartially considering the evidence in the case with your fellow jurors. In the course of talking about the case with the other jurors, you should be willing to think about your own views and change your opinion if convinced it is wrong. On the other hand, do not surrender your honest belief as to what the evidence shows just because your fellow jurors do not agree with you, or just to get a verdict.

Remember during your discussions that you are judges.

21

**INSTRUCTION NO.** _____22_____

The first thing you should do after you enter the jury room is to select someone to act as your foreperson to lead your discussions and speak for the jury in court.

A verdict form has been prepared for your convenience.

You will take the form to the jury room and, when you have reached unanimous agreement as to your verdict, the foreperson will fill in, date, and sign the verdict form upon which you unanimously agree, and then advise the Court that you have reached a verdict.

22

## INSTRUCTION NO. 23

If while you are discussing the case in the jury room you need to communicate with me, you may send a note by a marshal.  None of you should try to communicate with me except by a signed writing, and I will not communicate with any member of the jury about the case, other than in writing, or orally here in open court.

As you will hear from the oath which the marshals take, they too, as well as all other persons, are forbidden to communicate in any way with any member of the jury about the case.

You are never to reveal to any person -- not even to me -- how you stand, numerically or otherwise, on any question until you have returned to court with your unanimous verdict.

23

**INSTRUCTION NO.** _24_

If, under the Court's instructions, you find that plaintiff is entitled to a verdict against defendant, you must then award plaintiff damages in an amount that will reasonably compensate plaintiff for each of the following elements of claimed loss or harm. You must find that such harm or loss was or will be suffered by the plaintiff and that such harm or loss was legally caused by the act upon which you base your finding of liability.

**INSTRUCTION NO.** _25_

A legal cause of injury, damage, loss or harm is a cause which is a substantial factor in bringing about the injury, damage, loss or harm.

**INSTRUCTION NO.** _____26_____


      This does not mean that under the law there can only be one cause of an injury or damage. On the contrary, many factors or things, or the conduct of two or more persons or corporations may operate at the same time, either independently or together, to cause injury or damage; and in such case, each cause may be a legal cause for the purpose of determining liability in a case such as this one.

**INSTRUCTION NO.** _____27_____

The reasonable value of medical, hospital and nursing care, services and supplies reasonably required and actually given in the treatment of the plaintiff, and the present cash value or the reasonable value of similar items reasonably certain to be required and given in the future.

**INSTRUCTION NO.** _28_

The reasonable value of working time lost to date.

In determining this amount, you should consider evidence of plaintiff's earnings and earning capacity, how the plaintiff's time was ordinarily occupied, and find what plaintiff was reasonably certain to have earned but for the injury.

**INSTRUCTION NO.** _29_

The present cash value of earning capacity reasonably certain to be lost in the future as a result of the injury in question.

**INSTRUCTION NO.** _30_

The reasonable value of services performed by another in doing things for the plaintiff which, except for the injury, plaintiff would ordinarily do.

**INSTRUCTION NO.** _____3/_____

   The reasonable value of legal services required and actually received by the plaintiff in defense of the criminal charges.  You may not include in this award any compensation for the plaintiff's legal expenses in connection with this lawsuit.

**INSTRUCTION NO.** _32_

Reasonable compensation for any pain, discomfort, fears, anxiety, and other mental and emotional distress which the plaintiff suffered because of the injury and for any similar suffering you believe it is reasonably certain plaintiff will suffer for the same reason.

The law sets no definite standard under which you must decide the amount to be awarded for pain and suffering.  In making this award, you are to exercise your authority calmly so that the amount of damages you fix compensates plaintiff reasonably under the evidence in the case.

**INSTRUCTION NO.** _____*33*_____


You should compensate a plaintiff for any loss or harm which is reasonably certain to be suffered by plaintiff in the future as a legal result of the injury in question; however, you may not award speculative damages, which is compensation for future harm which, although possible, is not reasonably certain.

**INSTRUCTION NO.** ___34___

You may not include as damages any amount that you might add for the purpose of punishing the defendant or to make an example of the defendant for the public good or to prevent others from doing what defendant did.  Such damages would be punitive and they are not authorized in this action.

**INSTRUCTION NO.** _36_

      If you find that the plaintiff is entitled to a verdict, but you also find that under the instructions the plaintiff is not entitled to an award of actual damages, then you may return a verdict for the plaintiff in some nominal sum such as One Dollar ($1.00). The award of a nominal sum as actual damages would not prevent your awarding punitive damages in such amount as you deem appropriate, if you find that the award of punitive damages is justified under these circumstances.

**INSTRUCTION NO.** *37*

Under these instructions, the amount of damages you may award may be different depending on which claim is involved.  The plaintiff is only entitled to recover on each loss once, even if it is possible to recover for that loss under two or more claims.  So you must decide what damages are due on each claim for which you find a defendant liable, and fill in the verdict form so that the plaintiff only gets one award for each loss.